IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF TEXAS *ex rel.* AIMEE INGOLD and JAMES MARK ROBERTS, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:16-cv-410-O |
| v. | § § | JURY TRIAL DEMANDED |
| CAREFLITE, f/k/a NORTH CENTRAL TEXAS SERVICES AND QUICK MED CLAIMS, INC., | § § § § | |
| Defendants. | § | |

**CAREFLITE'S REPLY TO RELATORS' RESPONSE IN OPPOSITION TO MOTION TO DEFER DISCOVERY UNTIL MOTIONS TO DISMISS ARE DECIDED**

NOW COMES Defendant CareFlite ("CareFlite" or "Defendant") and submits this Reply to Relators' Response in Opposition to Motion to Defer Discovery Until Motions to Dismiss are Decided.

**INTRODUCTION**

Relators' Amended Complaint fails to satisfy Rule 9(b)'s particularity requirement. CareFlite filed its Motion to Defer Discovery Until Motions to Dismiss Are Decided ("Motion to Defer") after Relators embarked on a fishing expedition for hundreds of thousands of documents via a subpoena on Quick Med, who can be brought back into the lawsuit at any time, and also served discovery on CareFlite. [Clerk's Dkt No. 68, p. 1]. The Motion to Defer relies on Fifth Circuit authority that, in a False Claim Act case, Rule 9(b) "has long played [a] screening function, standing as a gatekeeper to discovery...," and that Relators do not acquire a "ticket to the federal discovery apparatus" unless and until they have first met the particularity standard for

pleading fraud. *U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 185 & 190 (5th Cir. 2009). [Clerk's Dkt No. 68, p. 3].

Relators' Response acknowledges this authority yet inappropriately asks this Court to not follow that authority. [Clerk's Dkt No. 73, pp. 7, 11]. In between, the Response does not argue that the false record cause of action (Count II) actually pleads any false record with particularity so as to obtain a ticket to the federal discovery apparatus. The Response does not argue that the concealment/failure to disclose cause of action (Count V) meets the particularity requirement so as to obtain a ticket to the federal discovery apparatus. Nor does the Response argue that the false claims presented causes of action (Counts I and IV) actually plead any false claim with particularity so as to obtain a ticket to the federal discovery apparatus.

The Response concedes, as outlined in CareFlite's Motion to Defer, that the *Grubbs* alternative (for pleading a false claim presented) requires the pleading of the particular details of two elements, an act that constitutes an unlawful *scheme* and acts constituting *reliable indicia* that false claims were actually submitted. [Clerk's Dkt No. 73, p. 9; Clerk's Dkt No. 68, p. 5]. The Amended Complaint does not plead any reliable indicia, and the Response ignores the omission. The failure to plead this element with particularity means that the *Grubbs* alternative does not give Relators a ticket to the federal discovery apparatus, and discovery should be deferred until the motions to dismiss have been decided.

I. **RELATORS MUST PLEAD FRAUD WITH PARTICULARITY BEFORE OBTAINING A TICKET TO THE FEDERAL DISCOVERY APPARATUS.**

The Motion to Defer argues that, under Fifth Circuit law, satisfaction of Rule 9(b)'s particularity of pleading requirement is prerequisite to a ticket to the federal discovery apparatus. *Grubbs,* 565 F.3d at 190. The particularity requirement "has long played [a] screening function, standing as a gatekeeper to discovery…." *Id.* at 185. The sequencing is that a relator must first

satisfy the particularity of pleading requirement. Under *Grubbs*, a relator does not get to go on a fishing expedition and later try to satisfy Rule 9(b). Satisfaction of the particularity requirement is the "ticket to the federal discovery apparatus." *Id.* at 190.

The Response fails to apply the Fifth Circuit authority that Relators must plead fraud with particularity before acquiring a ticket to the federal discovery apparatus.

## II. THE RESPONSE INAPPROPRIATELY ASKS THIS COURT TO IGNORE AND NOT FOLLOW FIFTH CIRCUIT AUTHORITY.

In an attempt to circumvent the consequences of Relators' failure to comply with Rule 9(b), the Response takes the position that, even if the Amended Complaint lacks particularity, Relators should be permitted to conduct a fishing expedition for (i) every document "concerning or relating" to hundreds of thousands of bills, (ii) every communication "concerning or relating" to hundreds of thousands of bills, (iii) hundreds of thousands of documents that are "related or concerning" the Amended Complaint, and (iv) every document "concerning or related" to Relators. [Clerk's Dtk No. 73, p. 11]. To try to disguise their remarkably inappropriate request, the Response miscites *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir. 1987). [Clerk's Dkt No. 73, p. 11]. It is not a fraud case and does not address Rule 9(b) or its particularity requirement. It is a case under the Freedom of Information Act and Privacy Act of 1974, and the issue was proper parties.

## III. THE AMENDED COMPLAINT DOES NOT PLEAD FRAUD WITH PARTICULARITY SO AS TO ENTITLE RELATORS TO THE FEDERAL DISCOVERY APPARATUS.

A brief summary of the regulatory frameworks is helpful context for analyzing why the Amended Complaint does not meet the pleading requirements. Ambulance companies sequentially apply two different regulatory frameworks. At the clinical or patient-care stage, the relevant regulatory framework is state law. It regulates ambulance clinical or patient care

services, such as BLS/ALS distinctions,[1] vehicle levels based on BLS/ALS distinctions,[2] emergency medical technician levels that may involve ALS/BLS distinctions,[3] patient assessments,[4] and clinical record keeping such as patient care reports ("PCRs").[5]

The sequential second stage is the subsequent preparation and presentment of claims, such as electronically presenting a claim to Medicare. The relevant regulatory framework is federal law. Federal regulation provides that ambulance services are billed to Medicare by the transport, as distinguished from billing for each separate medical service provided before or during the transport (see Clerk's Dkt No. 68, p. 20, which reproduces the chart listing the levels at which a transport may be billed to Medicare). One of the transport levels is ALS1, and several circumstances may qualify as alternative grounds for presentment of a claim at the ALS1 level. Under the second and third definitions of 42 C.F.R. § 414.605, a claim for a transport may be submitted at the ALS1 Medicare level when a paramedic administers a drug to a patient during a transport, but only if the drug was medically necessary. Under the first and third definitions of 42 C.F.R. § 414.605, a claim for transport may be submitted at the ALS1 Medicare level when an ALS crew member performs a patient assessment *and* an emergency response was necessary

---

[1]   25 T.A.C. §§ 157.2(3) and (6) define Advanced Life Support and Basic Life Support for the purpose of regulating ambulance clinical services.

[2]   25 T.A.C. §§ 157.2(4) and (7) define BLS vehicles and ALS vehicles.

[3]   25 T.A.C. §§ 157.2(26), (27), (28), 29), and (3) defined the levels of emergency medical technicians ("EMT"). The regular EMT is defined in terms of being certified to provide "basic life support" services. The EMT-paramedic is defined in terms of being able to provide "advanced life support" services.

[4]   25 T.A.C. § 157.2(66) requires an ambulance company to have standards of care based on medical protocols and standard emergency medical curriculum for subjects discussed in 25 T.A.C. §§ 157.32-157.35. "Patient assessment" is the subject of 25 T.A.C. § 157.32(c)(1)(B)(v).

[5]   EMS providers and EMTs must make accurate, complete written PCRs documenting a patient's condition up on arrival at the scene, the prehospital care provided, and the patient's status during transport, including signs, symptoms and responses, the consequence of failure to so may be revocation of the certification. 25 T.A.C. § 157.35(b)(3).

"because the patient's reported condition at the time of dispatch was such that only an ALS crew was qualified to perform the assessment." 42 C.F.R. § 414.605. The patient's reported condition at the time of dispatch should not be confused with whether the patient's observed condition at the scene requires ALS-level treatment, as the last sentence of the first definition in 42 C.F.R. § 414.605 states that, "An ALS assessment does not necessarily result in a determination that the patient requires an ALS level of service." *Id.*

### A. CAUSES OF ACTION ADDRESSING EMERGENCY TRANSPORTS DURING WHICH AN ALS ASSESSMENT WAS PERFORMED.

Making all inferences favorable to Relators, the allegations in paragraphs 48-52 of the Amended Complaint selectively quote from several documents giving guidance, at the clinical or patient-care stage, to ALS-level EMTs (e.g., paramedics, a/k/a/ "medics") when they were present and participated in a patient assessment. [Clerk's Dkt No. 13, pp. 10-11]. During an emergency transport, the paramedic is to perform a clinical patient assessment, and "An ALS assessment must be documented" in the PCR. The Amended Complaint does not plead that ALS assessments were recorded when not provided. The Amended Complaint does not plead that "ALS assessment" was recorded when not actually performed by an ALS-level paramedic. PCRs are prepared during the clinical stage and are not billing claims that billing personnel create and present to Medicare. Subsequently, billing personnel prepare and submit claims to Medicare under its federal regulatory framework. The federal billing rules apply at the creation and presentment of claims stage, not to the clinical/patient-care stage. The Amended Complaint is predicated on the assumption that the regulatory framework applicable to the claim creation and presentment stage applies to (or should be extended and applied to) the clinical or patient-care stage to limit what emergency care services may be provided to patients and recorded in a PCR. Paragraph 53 of the Amended Complaint pleads that that the claim creation and

presentment (billing) stage rules applicable to claims prepared and presented to Medicare apply to (or should be extended to) the clinical/patient-care stage activities listed in paragraphs 48-51. [Clerk's Dkt No. 13, pp. 10-11].

### 1. FAILURE TO ALLEGE WITH PARTICULARITY FALSE CLINICAL RECORDS (PCR'S).

The Amended Complaint (Count II) alleges creation of false PCR records material to claims presented to Medicare and Medicaid.  Rule 9(b) requires Relators to plead with particularity the false entries in specific PCRs.  That is required for a ticket to the federal discovery apparatus, and in conjunction, CareFlite has a right to know what is allegedly false on which PCR.  CareFlite's Motion to Defer points out that, with respect to the subject of ALS assessments, the Amended Complaint (¶¶ 48-53) fails to identify any false statement on any PCR or similar clinical record.  Relators' Response ignores the subject, implicitly admitting that the Amended Complaint fails to satisfy the particularity requirement.  [Clerk's Dkt No. 73, pp. 6-9].  Consequently, Relators do not have a ticket to the federal discovery apparatus.

### 2. FAILURE TO ALLEGE WITH PARTICULARITY ANY FALSE BILLING CLAIMS PRESENTED.

The Amended Complaint (Counts I and IV) alleges false billing claims presented to Medicare/Medicaid with respect to ALS assessments.  Rule 9(b) requires Relators to plead with particularity the alleged falsity in the specific claims presented.  CareFlite's Motion to Defer points out that the Amended Complaint fails to identify any false claims presented.  Relators' Response admits that "the Amended Complaint does not identify a specific upcoded ALS claim." [Clerk's Dkt No. 73, p. 9].  Consequently, Relators lack a ticket to the federal discovery apparatus.

### 3. THE *GRUBBS* ALTERNATIVE DOES NOT SALVAGE RELATORS' FAILURE TO PLEAD WITH PARTICULARITY.

The *Grubbs* opinion holds that, when unable to plead with particularity the fraudulent entry on a specific claim presented to Medicare or Medicaid, alternatively the relator may plead the particular details of (1) an unlawful scheme and (2) "reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190. Satisfaction of this alternative standard may qualify as a ticket to use the federal discovery apparatus. For example, in *Grubbs*, the particular detail of an unlawful scheme was, on a particular date at a restaurant, a named doctor articulated a plan to bill for face-to-face hospital visits that never occurred. *Id.* at 184. The particular details of just one of several reliable indicia were that on December 4, a named doctor recorded progress notes for visits with a particular patient, but the visits had never actually occurred and the progress notes had been falsified. *Id.* at 193. These reliable indicia led to a strong inference that false claims were presented because the fraudulent progress notes would have been sent to the hospital's billing personnel who – unaware of the fraud – would have routinely created and presented to the government a claim for the visits that had never actually occurred. *Id.* at 192.

#### a. UNLAWFUL SCHEME NOT PLED.

CareFlite contends that the Amended Complaint fails to plead with particularity a billing scheme, much less one that is unlawful. This is a pleading failure, not a defense. First, the PCR is subject to the state regulatory framework which requires an accurate record of what actually occurred in providing care to the patient. The acts asserted in paragraph 52 of the Amended Complaint do not assert a billing scheme because the federal framework applies to claims created and presented to Medicare, not to PCRs created during the clinical stage and not submitted to Medicare. [Clerk's Dkt No. 13, p. 11]. A PCR is not a "bill." Second, an *unlawful* scheme is

not pleaded with particularity. Billing personnel review the PCR to determine what is and is not billable to Medicare in accordance with its unique billing rules and then create a bill (claim) which is then presented to Medicare. All services listed on a PCR may not be billed to Medicare, and the Amended Complaint does not plead with particularity an "unlawful" scheme to submit unjustified claims to Medicare. The pleading in the subject suit contrast with the pleading in *Grubbs, supra,* where the "scheme" that was unlawful was to bill Medicare for patient visits that never occurred.

### b. UNLAWFUL RELIABLE INDICIA NOT PLED.

The Motion to Defer argues that the Amended Complaint failed to plead the particular details of any example serving any "reliable indicia" that false claims were actually presented to Medicare or Medicaid. In the Response, Relators pay lip service to "reliable indicia" but in its following pages the Response wholly fails to address the failure to plead the particular details of examples constituting reliable indicia. [Clerk's Dkt No. 73, p. 9]. This failure alone deprives Relators of a ticket to the federal discovery apparatus.

### B. CAUSE OF ACTION ADDRESSING AMBULANCE TRANSPORTS FROM HOSPITALS.

The Amended Complaint attributes a recommendation to CareFlite's vendor, Quick Med Claims, a party which Relators earlier dismissed. [Clerk's Dkt No. 13, pp. 9-10, ¶¶ 45-46]. The quoted allegation in Paragraph 45 of the Amended Complaint is "put down what they went in with." The Amended Complaint makes this allegation without providing context of whether Quick Med's recommendation refers to entries to be made in the patient history portion of the PCR or in the portion describing the patient's vitals on the day of the transport.

The first and third bullet points on page 2 of the Response assert that the Amended Complaint pleads that CareFlite's Mark Kessler, Douglas Filbert and James Swartz instructed

employees to falsify PCRs about the condition of patients being transported from hospitals. [Clerk's Dkt No. 73, p. 4]. The assertion is false because the cited paragraphs (¶¶ 44-46, 48-49, 50-52) do not plead any such statement to Kessler, Filbert, Swartz or any other CareFlite employee. The pleading attributes the statements to CareFlite's vendor, Quick Med.

### 1. FALSE ENTRY IN A PCR NOT DESCRIBED WITH PARTICULARITY.

The Motion to Defer points out that the Amended Complaint fails to describe a single false entry in a single PCR regarding transports from hospitals. Relators' Response fails to point out any particularity because there is none in the Amended Complaint. [Clerk's Dkt No. 73, p. 10]. The absence of particularity deprives Relators of a ticket to the federal discovery apparatus.

### 2. FALSE CLAIM NOT DESCRIBED WITH PARTICULARITY.

The Motion to Defer pointed out that the Amended Complaint fails to describe any false entry in any claim presented with regard to transports from hospitals. Relators' Response fails to point out any particularity because there is none in the Amended Complaint. [Clerk's Dkt No. 73, p. 10]. The absence of particularity deprives Relators of a ticket to the federal discovery apparatus.

### 3. THE *GRUBBS* ALTERATIVE DOES NOT SALVAGE THE TRANSPORT FROM HOSPITAL CAUSE OF ACTION.

The *Grubbs* alternative requires the elements of an unlawful scheme paired with unlawful reliable indicia leading to a strong inference that false claims were actually presented. If either element is absent, the *Grubbs* alternative does not salvage Relators' cause of action. Both elements are absent with regard to transports from hospitals.

### a. UNLAWFUL CAREFLITE SCHEME NOT PLED

The Amended Complaint does not plead any affirmative action by CareFlite constituting a scheme to defraud the government. The Fifth Circuit has ruled that a vendor's words are not sufficient. "Without any affirmative action by the company to allegedly defraud the government," a plaintiff/relator may not establish a False Claim Act violation. *U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.,* 417 F.3d 450, 454 (5th Cir. 2005).

### b. RELIABLE INDICIA NOT PLED

The Motion to Defer points out the absence of particular details of reliable indicia that false claims based on transports from hospitals were actually presented. Relators' Response carefully ignores the fatal deficiency. The lack of particularity deprives Relators of a ticket to the federal discovery apparatus.

### CONCLUSION

The Motion to Defer should be granted. Discovery should be deferred until motions to dismiss have been decided.

Respectfully submitted,

*/s/ Henry H. Robinson*
Henry H. Robinson
State Bar No. 17090500
Chris E. Howe
State Bar No. 10089400
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

**ATTORNEYS FOR DEFENDANT CAREFLITE**

## CERTIFICATE OF SERVICE

On September 12, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                      */s/ Henry H. Robinson*
                                                      Henry H. Robinson